26 CV 10117

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CHRISTIAN ROBERT KOMOR,

Plaintiff, appearing pro se,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant.

Case No. ____________________

**COMPLAINT FOR DAMAGES**

**AND INJUNCTIVE RELIEF**

**Personal injury: negligence**

**Demand: $100,000, plus allowable costs**

**Jury Trial Demanded**

FILED
U.S. DISTRICT COURT
2026 NOV 17 PM 2:23
S.D. OF N.Y.

## I. INTRODUCTION

1. Plaintiff Christian Robert Komor brings this civil action against Defendant International Business Machines Corporation to obtain injunctive relief and compensatory damages for severe, continuous, and aggravated bodily injury, pulmonary distress, and substantial impairment of health caused by Defendant's unlawful, excessive, and unmitigated industrial operations and local airborne emissions.

2. The challenged conduct concerns International Business Machines Corporation's own role in IBM Cloud DAL14 at Plano, Texas. IBM's ISO/IEC 27001:2022 certificate US022537, issued August 27, 2026, lists DAL14 as site 08 at 6715 Pinecrest Drive, Plano, Texas 75024, under IBM Cloud Infrastructure (IaaS). The listed site scope is Datacenter Operations. DAL14's Dallas market designation should not replace Plano as the published street-address city; the certificate does not establish its opening date. The challenged activities are limited to Defendant's own project decisions and conduct within its actual authority or control; another participant's acts are not attributed to Defendant merely because of a shared project. References below to emissions, breach and injury causation are limited to actual conduct and releases attributable to Defendant during its supported period of participation; neither future expansion nor companywide figures are treated as completed site operations.[1]

3. Plaintiff alleges negligent and unreasonable acts and omissions concerning emissions controls, heat rejection and air-quality mitigation in Defendant's own actual project activities. Plaintiff alleges that attributable greenhouse-gas releases contribute to environmental warming and the downstream smoke, ozone and airborne-allergen exposures that aggravate his physical health burden. The allegation of direct local pollutant or thermal-plume exposure from the selected project requires project-specific evidence; it is not inferred solely from a project's power capacity or location. Plaintiff alleges that progressive carbon accumulation and reinforcing environmental feedbacks threaten his physical survival.[2]

4. Plaintiff alleges that actual emissions and environmental effects attributable to Defendant's own conduct have aggravated his pulmonary, respiratory and immune-system conditions,

---

[1] Inside the Extinction Envelope. DOI: 10.31223/X5H214.

[2] How Climate Change Impacts Humans. DOI: 10.5281/zenodo.23428939.

resulting in recurring acute health crises, physical suffering and medical expenses. The proposed abatement measures are sought only to the extent they are technically feasible and within Defendant's authority or control. Plaintiff seeks an enforceable, site-specific injunction or negotiated consent decree requiring International Business Machines Corporation to deploy the existing technology of Direct Atmospheric Carbon Removal (DACR) which will utilize waste heat recovered from the covered HSDC activities within Defendant's control through a separately engineered heat pump, with independent additional liquid coolant obtained during the process of DACR. Plaintiff notes that recovered-carbon (R-$CO_2$) can be formed into many salable environmentally friendly products such as concrete building materials and polymers employing hundreds of workers (unlike HSDC) and over-compensating for capitol outlay to build dedicated clean-power generation, storage, and interconnection infrastructure to serve the HSCD-DACR-R-CO2 campus. [3]

5. Finally, the requested relief also includes $100,000 in compensatory damages for Plaintiff's physical injuries to date.

## II. PARTIES, JURISDICTION, AND VENUE

6. Plaintiff is a natural person residing in the Grand Junction, Colorado, area since 2019 and appearing pro se. Plaintiff is a citizen of the United States and is domiciled in Colorado, his permanent home, where he intends to remain or return.

7. Plaintiff sues in his individual capacity for his own physical injury; the Climate Deadline Foundation is not a party.

8. Defendant International Business Machines Corporation is identified in the cited public records. Its published company/contact address is 1 New Orchard Road, Armonk, NY, 10504-1722. The cited corporate record identifies incorporation in New York. On information and

---

[3] Anthropogenic Climate Forcing (Possibilities of Immediate Action). DOI: 10.5281/zenodo.23428944. Recovered Data-Centre Heat and Direct Air Capture. DOI: 10.31223/X5VR5N.

belief, based on the headquarters and principal-office materials, its principal place of business is in New York; that inference concerns the place of direction and control, not a maildrop.[4]

9. Plaintiff invokes subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a United States citizen domiciled in Colorado and therefore a citizen of Colorado. International Business Machines Corporation is incorporated in New York and, on information and belief, has its principal place of business in New York; it is therefore a citizen of New York. Complete diversity is alleged between these parties. Plaintiff demands $100,000 in compensatory damages for the physical injury alleged here, exceeding $75,000 exclusive of interest and costs, together with the requested prospective relief.[5]

10. This Court has general personal jurisdiction over International Business Machines Corporation because, on information and belief, its headquarters and principal place of business are in Armonk, New York, within this District, making it at home in the forum State. This allegation is based on the cited company headquarters materials and corporate records, not solely on a correspondence or registered-agent address. Personal jurisdiction is invoked

---

[4] 28 U.S.C. § 1332(a)(1) and (c)(1), amount in controversy and corporate citizenship: https://www.law.cornell.edu/uscode/text/28/1332 . Hertz Corp. v. Friend, 559 U.S. 77 (2010), actual direction, control and coordination (nerve center), not merely a mail drop: https://www.law.cornell.edu/supct/html/08-1107.ZS.html Additional identity/incorporation records: https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=INTERNATIONALBUSINESSMACHINES%208042100&aggregateId=forp-804210-04cb58a3-29c4-496e-b1bd-ba3c7463562d&searchTerm=INTERNATIONAL%20BUSINESS%20MACHINES&listNameOrder=INTERNATIONALBUSINESSMACHINES%208042100 Company identity/address publications: https://www.ibm.com/contact/global ; https://www.sec.gov/Archives/edgar/data/51143/000005114326000010/ibm-20251231.htm

[5] 28 U.S.C. § 1332(a)(1) and (c)(1), diversity jurisdiction, amount in controversy and corporate citizenship: https://www.law.cornell.edu/uscode/text/28/1332 . St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289 (1938), good-faith demand and legal-certainty standard: https://www.law.cornell.edu/supremecourt/text/303/283

under Federal Rule of Civil Procedure 4(k)(1)(A), subject to the forum State's jurisdictional law and constitutional due process.[6]

11. Plaintiff invokes this Court's diversity or alienage jurisdiction, as described in paragraph 9, over his common-law negligence claim and requests adjudication of the physical injury alleged in this Complaint and related prospective relief.[7]

12. Plaintiff invokes venue under 28 U.S.C. § 1391(b)(1) in the Southern District of New York. This action names a single defendant, International Business Machines Corporation; on the headquarters and jurisdictional facts alleged above, Defendant resides in this District for this action within the meaning of § 1391(c)(2), subject to § 1391(d) for a corporation in a State with multiple districts. The selected project at Plano, Texas; Dallas market designation is not alleged to be physically in this District merely because the headquarters is here. Venue is not predicated solely on the clerk's mailing address.[8]

13. Plaintiff asserts common-law negligence arising from International Business Machines Corporation's own challenged conduct concerning IBM Cloud DAL14 at Plano, Texas; Dallas market designation and the resulting physical injury in Colorado. Under Klaxon, a federal court sitting in diversity applies the choice-of-law rules of its forum State. Plaintiff proposes Colorado negligence law because the claimed respiratory injury and its aggravation occurred

---

[6] Personal-jurisdiction framework: Federal Rule of Civil Procedure 4(k)(1)(A), https://www.law.cornell.edu/rules/frcp/rule_4; Daimler AG v. Bauman, 571 U.S. 117 (2014), https://www.law.cornell.edu/supremecourt/text/11-965; corporate nerve-center distinction, Hertz Corp. v. Friend, 559 U.S. 77 (2010), https://www.law.cornell.edu/supct/html/08-1107.ZS.html. Company/office sources: https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=INTERNATIONALBUSINESSMACHINES%208042100&aggregateId=forp-804210-04cb58a3-29c4-496e-b1bd-ba3c7463562d&searchTerm=INTERNATIONAL%20BUSINESS%20MACHINES&listNameOrder=INTERNATIONALBUSINESSMACHINES%208042100 ; https://www.ibm.com/contact/global ; https://www.sec.gov/Archives/edgar/data/51143/000005114326000010/ibm-20251231.htm

[7] 28 U.S.C. § 1332, https://www.law.cornell.edu/uscode/text/28/1332; Federal Rule of Civil Procedure 7.1(a)(2), https://www.law.cornell.edu/rules/frcp/rule_7.1; unincorporated-entity citizenship, Siloam Springs Hotel, L.L.C. v. Century Surety Co., https://www.ca10.uscourts.gov/sites/ca10/files/opinions/01019407580.pdf. Case-specific corporate records: https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=INTERNATIONALBUSINESSMACHINES%208042100&aggregateId=forp-804210-04cb58a3-29c4-496e-b1bd-ba3c7463562d&searchTerm=INTERNATIONAL%20BUSINESS%20MACHINES&listNameOrder=INTERNATIONALBUSINESSMACHINES%208042100

[8] 28 U.S.C. § 1391, venue: https://www.law.cornell.edu/uscode/text/28/1391

in Colorado. Alternatively, under Rule 8(d)(2), Plaintiff pleads negligence under the law of the State in which the particular challenged conduct occurred if the forum's conflicts rules select that law. This alternative pleading does not assume that any State's law has already been determined controlling.[9]

## III. FACTUAL ALLEGATIONS

### A. Defendant's Project Role, Operations, and Disclosures

14. The selected project is IBM Cloud DAL14, at Plano, Texas. IBM's ISO/IEC 27001:2022 certificate US022537, issued August 27, 2026, lists DAL14 as site 08 at 6715 Pinecrest Drive, Plano, Texas 75024, under IBM Cloud Infrastructure (IaaS). The listed site scope is Datacenter Operations. DAL14's Dallas market designation should not replace Plano as the published street-address city; the certificate does not establish its opening date.[10]

15. The certificate identifies IBM Cloud Infrastructure (IaaS) as the certified organization and lists the DAL14 location under IBM International Business Machines for Datacenter Operations. It does not identify the site landowner, developer, colocation landlord, lease entity or equipment quantities; its information-security certification is not an environmental-performance certification. The challenged activities are limited to Defendant's own project decisions and conduct within its actual authority or control; another participant's acts are not attributed to Defendant merely because of a shared project.[11]

16. The project identification below defines the "Covered Facilities" for this Complaint, limited to the identified premises and Defendant's actual activities concerning them:

    a. Project: IBM Cloud DAL14.

    b. Location: 6715 Pinecrest Drive, Plano, Texas 75024.

---

[9] Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941), https://www.law.cornell.edu/supremecourt/text/313/487; alternative pleading, Federal Rule of Civil Procedure 8(d)(2), https://www.law.cornell.edu/rules/frcp/rule_8. Proposed Colorado negligence framework: Colorado Supreme Court civil jury instructions, Chapter 9, https://www.coloradojudicial.gov/sites/default/files/2026-02/Chapter%209.pdf. The forum's conflicts rules, rather than an assumed nationwide negligence rule, determine the governing law.

[10] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/downloads/documents/fr-fr/10a99803c82fdae7

[11] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/downloads/documents/fr-fr/10a99803c82fdae7

c. Scope: the portions and activities of the identified project that Defendant actually undertook or directed in its disclosed role. No unverified parcel, permit number, subsidiary or additional building is included.[12]

17. The reviewed project materials do not establish the exact generation, cooling and heat-dissipation equipment, its operating schedule or measured discharges attributable to this Defendant. The presence of continuously operating diesel generation or a particular cooling system is not inferred from the description of a data-center project.[13]

18. For 2025 IBM reports that 84.5 percent of its total electricity consumption came from renewable sources and that 85 percent of electricity consumed in IBM data centers was renewable, with 44 data centers supplied by 100 percent renewable electricity. It reports an estimated weighted-average data-center PUE of 1.39. The source does not identify DAL14 as one of those 44 sites or publish DAL14 consumption.[14]

19. IBM reports that 634 energy-conservation projects in 2025 avoided an estimated 123,000 MWh and 35,000 metric tons CO2e company-wide, primarily through IT-equipment upgrades across data centers. These are avoided-energy and emissions estimates, not IBM's total actual emissions or a DAL14 inventory.[15]

20. Plaintiff alleges that actual releases attributable to Defendant's activities concerning the Covered Facilities contribute to atmospheric accumulation, environmental warming and regional respiratory hazards. The selected project's location, operating status and Defendant's actual role limit that allegation; a measured site-specific discharge is not inferred from an announcement, design capacity or companywide inventory.

---

[12] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/downloads/documents/fr-fr/10a99803c82fdae7

[13] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/downloads/documents/fr-fr/10a99803c82fdae7

[14] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/responsibility/environment/energy-emissions

[15] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/responsibility/environment/energy-emissions

21. IBM states that it is working toward net-zero operational greenhouse-gas emissions by 2030 through energy conservation and increased renewable-electricity procurement. This is an IBM-wide commitment, not a DAL14-specific net-zero result.[16]

22. On information and belief, Plaintiff challenges International Business Machines Corporation's own design, development, computing, procurement or emissions-management decisions to the extent actually undertaken or directed in its disclosed role. No undisclosed subsidiary relationship or authority over another project participant is presumed.

23. Plaintiff alleges that actual and avoidable atmospheric releases attributable to Defendant's conduct contribute to environmental conditions that aggravate respiratory illness. That is Plaintiff's causation allegation, not a measured allocation of his injury to a particular source, nor a claim that a proposed facility was already emitting.

**B. Plaintiff's Physical Injuries and Medical Harm**

24. At all times relevant to this action, Plaintiff Christian Robert Komor has suffered from pre-existing, clinical pulmonary vulnerabilities, including reactive airway disease, severe asthma, and hyper-reactive immune-system sensitivities.

25. Between 2019 and 2026, Plaintiff suffered severe, progressive, and debilitating aggravation of his pre-existing pulmonary and immune conditions as a direct, foreseeable, and proximate result of the atmospheric degradation, ozone precursor enrichment, and fine particulate loading generated and contributed to by Defendant's unmitigated operations.

26. Defendant's emissions repeatedly triggered acute, life-threatening bronchospasms, severe airway inflammation, and acute dyspnea, resulting in:

   a. Multiple emergency hospital admissions and urgent clinical interventions;

   b. Continuous, specialized treatment under the ongoing care of a panel of four board-certified clinical immunologists and pulmonologists;

   c. High-dose oral and inhaled corticosteroid regimens and emergency bronchodilator therapy; and

---

[16] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/responsibility/environment/energy-emissions

d. Episodes of acute oxygen desaturation and physical collapse following ambient outdoor exposure.

27. As an illustrative example of this recurring impairment, routine outdoor physical exertion routinely induced debilitating respiratory distress, rendering Plaintiff physically incapacitated, struggling severely for breath, and unable to sustain ordinary outdoor movement or employment tasks.

28. As a direct and proximate result of Defendant's ongoing private nuisance and negligent acts and omissions, Plaintiff has suffered concrete, substantial bodily injuries, intense physical pain and mental suffering, substantial out-of-pocket medical expenses, loss of occupational and physical capacity, and severe deprivation of the ordinary physical comfort and peaceful enjoyment of life.

**C. Foreseeability of Regional Atmospheric Harm and Induced Respiratory Injury**

29. At all times relevant to this action, the causal relationship between expanding industrial greenhouse-gas emissions, localized ambient air warming, and the severe aggravation of chronic human respiratory illness was widely established, scientifically verified, and known to Defendant International Business Machines Corporation.

30. Well-established scientific consensus, including published findings of the Intergovernmental Panel on Climate Change ("IPCC"), confirms that atmospheric greenhouse-gas accumulation drives compound regional environmental hazards—specifically lengthening wildfire fire seasons, increasing ambient ground-level ozone formation, and escalating particulate air pollution.

31. Peer-reviewed atmospheric and epidemiological research has established that:

a. Anthropogenic warming has nearly doubled the forest area burned by regional wildfires across the Western United States, generating pervasive and dense plumes of fine particulate matter (PM2.5);

b. Regional warming accelerates atmospheric photochemical reactions, systematically increasing ambient ground-level ozone concentrations during peak operating seasons; and

c. Regional climate shifts have lengthened North American airborne pollen seasons by approximately twenty days while significantly increasing aeroallergen concentrations.

32. Fine particulate matter (PM2.5), elevated ground-level ozone, and concentrated thermal exhaust plumes represent potent, acute pulmonary irritants that foreseeably induce severe bronchospasms, cellular lung inflammation, and disabling exacerbations in individuals with pre-existing reactive airway disease and allergic vulnerabilities.

33. IBM states that the growth of AI brings increased attention to energy use, greenhouse-gas emissions, water consumption and the material intensity of advanced computing systems. The statement addresses industry and corporate considerations, not quantified DAL14 impacts.[17]

34. Plaintiff alleges that Defendant failed to take reasonable precautions against avoidable atmospheric harm within the activities it actually undertook or directed. This allegation is limited by the disclosed project status and does not assert completed operations before the supported operating period or assume that proposed mitigation was technically available at every date.

35. It was entirely foreseeable to a reasonable operator in Defendant's position that adding massive, unscrubbed thermal plumes and combustion byproducts to an already stressed regional airshed would compound ambient particulate and ozone hazards, directly resulting in acute respiratory crises for vulnerable individuals residing in the downwind impact zone, including Plaintiff.

36. **(a) Point of Agency Loss.** Plaintiff alleges that the Point of Agency Loss (POAL) can now be estimated mathematically. POAL denotes the point of no further effective human actionability: the threshold beyond which even a fully deployed portfolio of First Tier Interventions (FTI), including Direct Atmospheric Carbon Removal (DACR), can no longer arrest the climate–ecological degradation and extinction process.

---

[17] Project/company publications, cited for the disclosures stated in the text: https://www.ibm.com/responsibility/environment/energy-emissions

**(b) Mathematical formulation.** Let $U(t)$ be the set of feasible interventions that remain capable of averting the specified cascade at time $t$. The threshold is defined as follows:

$$\boxed{t_{\mathrm{POAL}} = \inf\{t \geq 0\colon U(t) = \emptyset\}}$$

This defines $t_{\mathrm{POAL}}$ as the earliest time at which no effective, feasible intervention remains. If that set never becomes empty, then $t_{\mathrm{POAL}} = +\infty$.

**(c) First Tier Interventions.** FTI include the relief sought in this Complaint: DACR integrated with hyperscale data centers (HSDC) and uses for recovered carbon dioxide (R-$CO_2$). The complementary interventions are methane suppression; ocean alkalinity enhancement (OAE); stratospheric aerosol injection (SAI); and coral resilience and marine conservation. A clean-energy foundation supports the entire portfolio.

**(d) Projected limits and urgency.** Plaintiff's first-order intervention-portfolio assessment assigns a 15–20% prospect of avoiding POAL under its best-effort deployment assumptions, combining estimated physical potential with deployment readiness. This assumption-dependent diagnostic assessment is developed in Plaintiff's Extinction Envelope analysis. It underscores Plaintiff's allegation that delay compounds the danger. The relief sought here is directed to International Business Machines Corporation's covered activities and the site-specific emissions-control and carbon-removal measures set out in the Prayer for Relief.[18]

**A model average is not a safety guarantee**

37. The historical sea-ice comparison examined in Plaintiff's Least Drama manuscript found a September Arctic decline of 7.8 ± 0.6% per decade during 1953–2006, against an AR4 multi-model mean of 2.5 ± 0.2% per decade, approximately a threefold discrepancy.[19]

[18] Portfolio estimate: Komor, Inside the Extinction Envelope, intervention-portfolio assessment and "Limits and disclosure," https://doi.org/10.31223/X5H214 . Independent tipping-point context, not the source of the 15–20% estimate: Armstrong McKay et al. (2022), Exceeding 1.5°C global warming could trigger multiple climate tipping points, Science 377, eabn7950, https://doi.org/10.1126/science.abn7950

[19] Komor, Erring on the Side of Least Drama: Evaluating Claims of Conservative Bias in Climate Risk Assessment. DOI: https://doi.org/10.5281/zenodo.23428086 . Repository: https://zenodo.org/records/23428086 Stroeve, J., Holland, M. M., Meier, W., Scambos, T., and Serreze, M. (2007), Arctic sea ice decline: Faster than forecast, Geophysical Research Letters 34, L09501, DOI: https://doi.org/10.1029/2007GL029703 . Historical simulation comparison: https://onlinelibrary.wiley.com/doi/abs/10.1029/2007GL029703

44. Defendant's breaches were committed willfully, knowingly, or with gross negligence and conscious disregard for the health and physical well-being of downwind residents and vulnerable individuals.

45. As a direct, foreseeable, and proximate result of Defendant's breaches, Plaintiff suffered acute, severe, and repeated physical aggravation of his chronic asthma and immune-system illnesses, requiring emergency medical interventions, extensive specialist treatment, physical suffering, and substantial economic damage.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christian Robert Komor respectfully requests that this Court enter judgment in his favor and against Defendant International Business Machines Corporation, and grant the following relief:

A. An award of compensatory damages in the amount of $100,000 for bodily injury, medical expenses, physical pain, and noneconomic harm incurred to date;

B. Entry of a preliminary and permanent injunction ordering Defendant International Business Machines Corporation to abate proven ongoing or sufficiently imminent atmospheric hazards attributable to its own activities concerning IBM Cloud DAL14 at Plano, Texas, to the extent of Defendant's authority or control, by:

1. Submitting, within ninety (90) days of the Court's order, a certified engineering audit of all direct and operational emissions, recoverable waste heat, and cooling-system discharges at the covered facilities;

2. Submitting, within one hundred eighty (180) days, an enforceable compliance plan to eliminate unmitigated atmospheric venting through the installation of closed-loop waste-heat recovery, mechanical heat pumps, and verifiable point-source emissions-abatement interfaces; and

3. Achieving full operational compliance with all verified abatement requirements within twenty-four (24) months of the entry of the Court's decree;

C. In the alternative, entry of an enforceable, court-supervised Consent Decree embodying equivalent mandatory emissions-abatement, heat-recapture, and verifiable net-removal milestones;

D. An award of allowable filing fees, statutory interest, and taxable court costs; and

E. Such other and further legal or equitable relief as this Court deems just and proper.

**VI. JURY DEMAND**

Plaintiff Christian Robert Komor hereby demands a trial by jury on all issues and claims so triable as a matter of right.

Respectfully submitted,

Dated: 11-09-2026

Signature: ______________________

Christian Robert Komor, Plaintiff pro se
246 Hollyberry Way
Fruita, CO 81521
Telephone: 800-884-0824
christiankomor@k4gov.com

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
LEGAL FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE. Retail

P

US POSTAGE PAID

$14.25

Origin: 81501
11/10/26
0738340501-55

PRIORITY MAIL®

0 Lb 7.80 Oz

RDC 01

EXPECTED DELIVERY DAY: 11/14/26

C099

SHIP TO:
500 PEARL ST
NEW YORK NY 10007-1316

USPS TRACKING® #

9505 5110 5762 6314 4747 68

PRIORITY® MAIL

- Expected ...
- Domestic ...ions apply).*
- USPS Tra...y international destinations.
- Limited i...
- When us...is required.

*Insurance do...exclusions see the Domestic Mai...

** See Interna...nd limitations of coverage.

LEGAL FLAT RATE ENVELOPE

ONE RATE

TRAC...

PS0...

...dule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PAPER POUCH how2recycle.info

Christian R. Komor
246 Hollyberry Way
Fruita, CO 81521

TO:

Pro Se Intake Unit
U.S. District Court
Southern District of New York
500 Pearl Street
Room 205
New York, NY 10007

FILED
U.S. DISTRICT COURT
2026 NOV 17 PM 2:2_
S.D. OF N.Y.

USMP3 SDNY

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.